UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO: 3:17-CR-288 (VAB) |
| v. | : | |
| JAMES RIPBERGER | : | JUNE 12, 2019 |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

**I.     INTRODUCTION**

On January 16, 2019, the defendant pled guilty to Count One of the Indictment charging him with Receipt of Child Pornography in violation of 18 U.S.C. § 2252(a)(2). The United States Probation Office calculated the defendant's advisory guideline range to be 135 to 168 months, which is also the range stipulated by the parties in the plea agreement. The defendant waived his right to appeal a sentence of 168 months or less.

The government respectfully submits that a sentence at the high end of the advisory range is appropriate In light of the nature of the offense conduct as well as relevant conduct involving his neighbor's granddaughter. The government also requests the defendant receive a term of supervised release of at least five years, special assessments totaling $5,100 along with restitution[1] and forfeiture.

**II.    DISCUSSION**

In light of the agreement of the parties on the advisory guidelines and the concurrence of the Probation Office, this memorandum will focus on the applicability of the factors in 18 U.S.C. § 3553(a).

---

[1] The Government is awaiting restitution requests from the victims of the offense conduct and MV. A supplemental memorandum will be submitted upon receipt of any restitution requests.

1

A.      **The Nature and Circumstances of the Offense**

As detailed in the PSR, this investigation began on October 3, 2017, when the Glastonbury Police Department ("GPD") received information from the Department of Children and Families ("DCF") from a mandated reporter (MV's counselor). *See* PSR at ¶ 10. The counselor reported that a then-fourteen year old female ("MV") disclosed that Ripberger sexually assaulted her.[2] *Id.* In addition, the MV stated that Ripberger recorded her or attempted to record her when she showered and change clothes and that she also had seen the defendant looking at child pornography on his computer. PSR at ¶ 10 and ¶ 22.

As a result of this disclosure, on October 12, 2017, Glastonbury police and federal agents executed search warrants on the defendant's house and seized numerous computers and digital devices. Subsequently, a federal search warrant was executed for additional devices that were not seized in the original warrant. PSR at ¶ 23.

A review of those devices uncovered a very large collection of child pornography. The defendant possessed 2,231 unique images and 20 videos of child pornography. PSR at ¶ 24. The defendant also possessed over 17,000 images of child erotica. *Id*. Examples of the pornographic images are described in paragraph 25 of the PSR.

---

[2] As noted in Defendant's sentencing memorandum and his objections to the PSR, defendant disputes that he sexually assaulted the Minor Victim. Defendant objects to paragraphs 13 through 18 of the PSR that discuss the sexual assaults. The Government submits that the Probation Officer was correct in keeping those paragraphs in the PSR because (1) they each begin with the statement that the "minor victim states…" rather than any suggestion that the defendant was convicted of this conduct; and (2) the defendant's dispute with the minor victim's statement is noted in paragraph 29 of the PSR. Accordingly, the Government requests the Court adopt the facts set forth in the PSR.

Significantly, the search also revealed images and videos which corroborate the MV's account of the defendant's predatory behavior.[3] In particular, the search revealed 10 thumbnail images of the minor victim jumping in the defendant's bed. In one of those pictures, the minor victim is lifting up her shirt, and it reveals that she is completely naked underneath. Ripberger's reflection can be seen in one of those pictures. PSR at ¶ 26.

The forensic review also recovered numerous photos and videos of the minor victim that the defendant recorded which do not legally constitute child pornography, but are disturbing because the defendant is repeatedly zooming in to focus on the minor victim's clothed buttocks and vaginal areas. *Id*. In other videos, the defendant (1) is attempting the record the MV as she is changing in the backseat of his car. Ripberger can be heard talking to the MV denying his phone is recording and (2) is at the beach with the MV and her grandmother and he repeatedly tries to pull the back of the MV's bathing suit bottoms and take a picture of her naked buttocks.

In her statement, the MV reported that the defendant would try to record her when she was changing or in the bathroom by leaving a camera on the back of the toilet. PSR at ¶ 19. No surreptitious recordings of the MV in a bathroom were located, however law enforcement recovered videos in which the defendant appears to inadvertently record himself as he is placing the video camera on the back of a toilet.

Finally, and most disturbing of all, was one video recovered in which the defendant and the minor victim appear to have been at a public pool or pond. *Id*. The video begins at an outdoor shower where the defendant is recording the MV as she showers while in her bathing suit. The camera then appears to be placed in a mesh or see-through bag and continues recording as they

---

[3] The defendant's counsel and the probation officer who prepared the PSR reviewed the videos and images of the MV discussed herein. If the Court wishes to review any of the videos and/or images, the Government will bring them to the court for sentencing (or any other time the Court requests).

walk into a changing room. The defendant and the MV enter a private changing stall together and the camera, still recording, is placed facing into the changing area. The defendant and MV begin changing together. At one point, the minor victim is completely nude and the defendant can be seen drying her off with a towel. At times, the defendant's erect penis is visible. Once they both have their clothes back on, the defendant lifts the MV, wraps her legs around him and rubs the minor victim up and down against his genital area in a simulated sex act. *Id*. Throughout the video, the defendant is speaking in a low, whispered tone of voice.

The crime of receiving child pornography is always a serious offense that preys upon the most vulnerable of victims. The fact that children suffer the sexual abuse, and the abuse is recorded, is a horrible reality. The child's abuse is then exacerbated by people, like the defendant, who download those images for his own disturbing gratification.

The receipt and consumption of child pornography have enduring and profound effects on the victims. In the landmark decision, *New York v. Ferber,* 458 U.S. 747 (1982), the Supreme Court acknowledged the harm suffered by children as a result of the production and trafficking of child pornography stating:

> [P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography.

458 U.S. 758, n.9.

The defendant's offense was serious. When one considers his vast collection of child porngraphy, his admission that he has been viewing child pornography for decades, his recording of his simulated sex act with the MV in the changing stall, the thumbnails of the MV jumping on

4

his bed while lifting her shirt to reveal that she does not have clothes on underneath and the repeated recordings of the MV in the back of his car or on a beach in which he is focusing in on her clothed genitalia and buttocks, the need for a long sentence becomes clear.

### B. History and Characteristics of the Defendant

The United States does not dispute that the defendant has positive attributes. His longterm employment and his connection to his family and his ex-wife are notable. However, the defendant had been secretly viewing, possessing and/or downloading child pornography for decades. *See* Defendant's Sentencing Mem. at 9 and Exh. 1. Moreover, his behavior with the minor victim also lasted years. One need only view the recording in the changing stall to get a sense that the person described by his family and ex-wife is quite different than the man who is depicted in that video and who violated the trust of the MV.

The defendant asks the court to consider his age one of the reasons to support a below-guideline sentence. Def.'s Sentencing Mem at 11, note 2. In support of this argument, the defendant cites *United States v. Jenkins,* 854 F.3d 181 (2d Cir. 2017). In *Jenkins,* the Second Circuit criticized the district court's determination that the defendant was likely to re-offend because "recidivism substantially decreases with age." *Jenkins*, 854 F.3d at 192. The facts of *Jenkins* are distinguishable from the case at hand. Jenkins involved an individual who was convicted of possessing and transporting child pornography. The Second Circuit found his sentence of 225 months' imprisonment to be substantively unreasonable. Importantly, in that decision, the Court repeatedly states that *Jenkins* "did not produce or distribute child pornography and did not contact or attempt to contact a minor." *Id* at 184 and 190 (noting that the government does not allege that the defendant had any contact or attempted to contact a child or had engaged

in any sexually dangerous behavior). Here, not only is the advisory guideline range significantly lower than in *Jenkins*, but there is no dispute that the defendant attempted to record the MV and the video from the changing room demonstrates that the defendant had inappropriate sexual contact with the MV.

The defendant also argues that his openness in talking about his pedophilia with Dr. Gibeau and his willingness to go through with treatment should justify a lesser sentence. However, the defendant never sought mental health treatment prior to being incarcerated. PSR at ¶ 57. The defendant was aware of his own conduct over the years, and according to Dr. Gibeau was free of any significant psychopathology. PSR at ¶ 59. In other words, nothing was stopping him from seeking help over the past thirty years. Only now, when the defendant's length of incarceration is at issue, has he pursued mental health treatment.

### C. The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment

As noted above, receipt of child pornography is a serious offense that requires significant punishment especially when that receipt resulted in the amassing of a significant collection and where the defendant had sexual contact with a minor. The imposition of a guideline's sentence would reflect the seriousness of the defendant's offense, promote respect for the rule of law, and provide the appropriate punishment for the offense.

### D. The Need to Afford Adequate Deterrence to Criminal Conduct and Protect the Public from Further Crimes of the Defendant

The defendant's long history of receiving child pornography and his history with the MV demonstrate that any sentence should provide specific deterrence to Ripberger.

There is also a need for the sentence to provide general deterrence. Child exploitation offenses are difficult to detect. They often occur in secret. The public must know that if one commits a child sex crime, the government will not take it lightly.

Congress, the Supreme Court, and the Sentencing Commission believe general deterrence is a very important factor when considering an appropriate sentence in child pornography cases.. *See, e.g., United States v. Irey,* 612 F.3d 1160, 1211 (11th Cir. 2010) (quoting *United States v. Ferber,* 458 U.S. 747, 760 (1982)) (The most expeditious if not the only practical method of law enforcement may be to dry up the market for [child pornography] by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product); *see also See, e.g., United States v. Reingold*, 731 F.3d 204, 216 (2d Cir. 2013) ("As Congress, courts, and scholars all recognize, child pornography crimes at their core demand the sexual exploitation and abuse of children. Not only are children seriously harmed—physically, emotionally, and mentally—in the process of producing such pornography, but that harm is then exacerbated by the circulation, often for years after the fact, of a graphic record of the child's exploitation and abuse.")

Given the nature of the defendant's conduct and the need to deter others like the defendant from committing sex crimes against children, principles of specific and general deterrence justify a sentence for the defendant within the guidelines.

### E. The Need to Avoid Unwarranted Disparities

A guideline sentence of between 135 to 168 months for a defendant with no criminal history would not result in an unwarranted disparity. Recently the Second Circuit affirmed a sentence of 100 months for a defendant convicted of possession and receipt of child pornography who was a criminal history category I. *United States v. Wallace,* 607 F. App'x 25, 27 (2d Cir.

2015). At trial, the evidence established that Wallace possessed several videos and hundreds of images containing child pornography, much of which involved prepubescent minors, but there was no evidence of producing child pornography or having sexual contact with a minor. *Id.*

### F. Defendant's Arguments for a Non-Guideline Sentence Are Not Persuasive

In his sentencing memorandum, the defendant correctly points out that the Second Circuit cautioned courts to use great care when applying U.S.S.G § 2G2.2. *United States v. Jenkins*, 854 F.3d 181, 188 (2d Cir. 2017); *United States v. Dorvee*, 616 F.3d 174, 188 (2d Cir. 2010). In *Dorvee*, the Second Circuit deemed a sentence of 240 months, for distribution of child pornography, as unreasonably high even though it was within the sentencing guidelines. *Dorvee*, 616 F.3d at 176. In deeming the sentence unreasonable, the second circuit criticized the district court's "assumption that Dorvee was likely to actually sexually assault a child, a view unsupported by the record evidence." *Id*. at 183. Here, Ripberger's advisory guideline range is significantly lower than in Dorvee, and there is uncontroverted evidence of his sexual contact with the MV and his attempts to record her.

## III. CONCLUSION

For the foregoing reasons, the Government submits that a sentence at the high end of the advisory Guidelines range of 135 to 168 would be sufficient but not greater than necessary to punish the defendant for his conduct, promote respect for the law, address the seriousness of his offenses and accurately reflect all other sentencing factors.

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY

/s/ *Nancy V. Gifford*
NANCY V. GIFFORD
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. CT16324
450 Main Street, Room 328
Hartford, CT 06103
(860) 947-1101

## CERTIFICATE OF SERVICE

This is to certify that on June 12, 2019, a copy of the foregoing memorandum was filed electronically and served by first-class United States mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ *Nancy V. Gifford*
NANCY V. GIFFORD
ASSISTANT UNITED STATES ATTORNEY